IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRANZDEPOT, LLC, | : | |
| | : | CASE NO. |
| Plaintiff, | : | |
| | : | **PLAINTIFF'S COMPLAINT FOR** |
| v. | : | **DECLARATORY AND INJUNCTIVE** |
| | : | **RELIEF AND DAMAGES** |
| TRANSTAR INDUSTRIES, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

COMES NOW Plaintiff TranzDepot, LLC ("TranzDepot"), by and through its undersigned counsel, and in support of its Complaint for Declaratory and Injunctive Relief and Damages against Defendant Transtar Industries, LLC ("Defendant"), respectfully shows to the Court the following facts:

**Parties**

1. TranzDepot is a limited liability company organized under the laws of the State of Michigan with its principal place of business in Michigan.

2. Defendant is a limited liability company organized under the laws of the State of Ohio with its principal place of business in Ohio. Defendant maintains CSC-Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215 as its registered agent for service of process.

**Jurisdiction and Venue**

3. This Court has jurisdiction over TranzDepot's claims pursuant to 15 U.S.C. §§ 4 and 15, and 28 U.S.C. §§ 1331, 1332 and 1367.

4. Venue is proper in this Court pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391.

**Facts Relevant to All Counterclaims**

5. TranzDepot and Defendant are in the business of distributing transmission and drivetrain-related products.

6. Defendant's Vice President of Sales Tom DeMille has testified that Defendant "is the global leader in transmission and driveline-related solutions."

7. There are significant barriers to entry into the industry in which TranzDepot and Defendant compete.

8. DeMille has testified that Defendant "has 98 percent brand recognition in our space. So if we opened in a city that we did not service, the customers would understand who we are, what we represent, and that we were in their town."

9. DeMille has testified that Defendant "holds a competitive advantage over its competitors based on its robust distribution network of more than 75 locations throughout the domestic United States, Puerto Rico and Canada."

10. Defendant possesses monopoly power.

11. TranzDepot has one location, which is in the Detroit, Michigan area.

12. DeMille has testified that "[b]ased on [his] experience, it is very difficult for an unknown to enter the Detroit transmission market without an asset purchase. Opening a branch with no existing customers, name recognition, or good will would be very difficult in the competitive Detroit market."

13. On May 23, 2019, Defendant filed a Complaint for Injunctive Relief With Jury Demand in Cuyahoga County Court of Common Pleas asserting claims of misappropriation of trade secrets, tortious interference with economic and/or business relations, and breach of contract against TranzDepot, Seal Aftermarket Products, LLC ("Seal"), Chadd Lester, Alven Rivera, and Cary Young.

14. The case was removed to this Court on May 29, 2019, where it was docketed as Case No. 1:19-cv-01230-PAB.

15. On June 14, 2019, TranzDepot and the other defendants in Case No. 1:19-cv-01230-PAB filed their Answer and Counterclaims asserting claims against Defendant for violation of Sections 1 and 2 of the Sherman Act, tortious interference with business relationships, tortious interference with prospective business advantage, and unfair competition based upon malicious litigation.

16. These counterclaims were based on Defendant's conduct prior to June 14, 2019, such as its denying, persuading, and/or coercing suppliers to deny TranzDepot the supplies and relationships it needed to compete fairly.

17. On July 31, 2019, the Court denied Defendant's Motion for Temporary Restraining Order in Case No. 1:19-cv-01230-PAB finding, inter alia, that "much of the information identified by Plaintiff as a 'trade secret' is not confidential in nature and, in many instances, is publicly available," including but not limited to "Plaintiff's customer lists, pricing, inventory, and delivery routes," and also because Defendant failed to demonstrate that TranzDepot or the other defendants were improperly using this information.

18. The deadline for the parties to amend pleadings in Case No. 1:19-cv-01230-PAB was September 5, 2019.

19. TranzDepot and the other defendants in Case No. 1:19-cv-01230-PAB filed an Amended Answer and Counterclaims on September 5, 2019, and an Answer to Amended Complaint and Counterclaims on September 19, 2019.

20. These counterclaims were based on Defendant's conduct prior to the dates of those amendments.

21. On October 11, 2019, Defendant served its First Set of Interrogatories and Requests for Production on TranzDepot and the other defendants in Case No. 1:19-cv-01230-PAB.

22. Defendant served its First Requests for Admissions and Second Set of Interrogatories and Requests for Production on TranzDepot and the other defendants in Case No. 1:19-cv-01230-PAB on November 21, 2019.

23. On November 27, 2019, Defendant served its Third Set of Requests for Production on TranzDepot and the other defendants in Case No. 1:19-cv-01230-PAB.

24. On February 17, 2020, TranzDepot produced to Defendant's attorneys 2,885 customer invoices in response to Defendant's discovery requests in Case No. 1:19-cv-01230-PAB.

25. On February 20, 2020, TranzDepot produced to Defendant's attorneys an additional 618 customer invoices in response to Defendant's discovery requests in Case No. 1:19-cv-01230-PAB.

26. On information and belief, Defendant's attorneys provided Defendant with copies of TranzDepot's invoices produced in Case No. 1:19-cv-01230-PAB.

27. After TranzDepot produced its customer invoices which contained pricing to Defendant in February 2020, Defendant made significant changes to its pricing for those customers.

28. For instance, Defendant used to sell one particular product to Customer H for $105.00.

29. After TranzDepot produced its invoices reflecting sales of this product to Customer H in Case No. 1:19-cv-01230-PAB, Defendant dropped its price to Customer H for this product to $54.83.

30. On information and belief, Defendant's new price for this product sold to Customer H is below an appropriate measure of its costs.

31. Defendant previously sold the same or similar products to other customers for $99.00, $104.06, and $110.00, and on information and belief, Defendant continues to use this pricing for other customers with whom it does not compete with TranzDepot.

32. Similarly, Defendant used to sell another product to Customer C for $129.98.

33. After TranzDepot produced its customer invoices reflecting sales of this product to Customer C in Case No. 1:19-cv-01230-PAB, Defendant dropped its price to Customer C for this product to $68.25.

34. On information and belief, Defendant's new price for this product sold to Customer C is below an appropriate measure of its costs.

35. Defendant previously sold the same or similar products to other customers for $120.00, $129.95, $139.00, $139.66, $140.00, $148.00, $150.00, and $175.00, and on information and belief, Defendant continues to use this pricing for other customers with whom it does not compete with TranzDepot.

36. Defendant has a reasonable prospect and/or a dangerous probability of recouping its investment in below-cost prices.

37. Even when Defendant did not reduce its pricing below an appropriate measure of its costs, it still used TranzDepot's customer invoices produced in Case No. 1:19-cv-01230-PAB outside of the litigation to compete in the marketplace.

38. For example, Defendant previously sold a third product to Customer A for $162.64.

39. TranzDepot sold this same product to Customer A for $131.25.

40. After TranzDepot produced its customer invoices reflecting sales of this product to Customer A in Case No. 1:19-cv-01230-PAB, Defendant dropped its price to Customer A for this product to $131.25.

41. On information and belief, Defendant did not obtain TranzDepot's customer invoices or pricing for these products from customers but rather used TranzDepot's February 2020 document production in Case No. 1:19-cv-01230-PAB for competitive purposes.

42. Defendant's conduct was targeted at TranzDepot.

43. On information and belief, Defendant did not implement such significant drops in its customer pricing to other customers for whom it does not compete with TranzDepot and/or in other markets in which it does not compete with TranzDepot.

### Count I
### (Violation of Section 2 of the Sherman Act)

44. TranzDepot re-alleges and incorporates herein by reference each and every allegation of its Complaint set forth above.

45. Section 2 of the Sherman Act, 15 U.S.C. § 2, states, in pertinent part, "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . ."

46. Defendant's actions in setting its customer pricing below an appropriate measure of its costs ("predatory pricing") were within the flow of interstate commerce and have substantially adversely affected interstate commerce.

47. The relevant product market within which Defendant's predatory pricing occurred is the business of distributing transmission and drivetrain-related products.

48. The relevant geographic markets in which Defendant's predatory pricing occurred include the States of Ohio, Florida, Illinois, Indiana, Iowa, Michigan, Minnesota, Pennsylvania, and Wisconsin, and metropolitan areas such as Miami, Florida; Chicago, Ottawa, and Rockford, Illinois; Des Moines, Iowa; Fort Wayne and South Bend, Indiana; Ann Arbor, Detroit, Flint, Grand Rapids, Jackson, Lansing, Saginaw, and Traverse City, Michigan, Grand Rapids and Minneapolis, Minnesota; Cleveland, Defiance and Toledo, Ohio; Bloomsburg, Pennsylvania; and Eau Claire, Milwaukee, and Wausau, Wisconsin.

49. Defendant has a reasonable prospect and/or a dangerous probability of recouping its investment in below-cost prices, i.e., recovering, in the form of later monopoly profits, more than the losses suffered.

50. Such recoupment is injurious to consumers, the competitive process, and competition in ways the Sherman Act was intended to prevent.

51. Defendant engaged in a planned and executed strategy of predatory pricing with specific intent to (1) drive TranzDepot out of business; (2) eliminate competition for customers who purchase transmission and drivetrain-related products in the relevant geographic markets; and (3) monopolize the market for transmission and drivetrain-related products in the relevant geographic markets.

52. Defendant's predatory pricing were directed at driving TranzDepot from the market, destroying competition, not benefitting consumers, and in the long run, neutralizing or destroying competition in the relevant industry and geographic markets.

53. Defendant's conduct will directly harm competition in the relevant industry and geographic markets by reducing consumer choice, stifling innovation, drastically undercutting prices, and forcing TranzDepot into bankruptcy.

54. Defendant has illegally attempted to monopolize the market for transmission and drivetrain-related products in the relevant geographic markets.

55. As a direct and proximate result of Defendant's actions, customers in the relevant geographic markets will have fewer opportunities and locations to purchase transmission and drivetrain-related products.

56. Defendant's predatory pricing violates Section 2 of the Sherman Act.

57. Defendant's predatory pricing caused TranzDepot antitrust injury, i.e., injury of the type the Sherman Act was intended to prevent and that flows from that which makes Defendant's acts unlawful.

58. TranzDepot's antitrust injury resulted directly from Defendant's predatory pricing.

59. TranzDepot's business and goodwill have been and will continue to be damaged, financially and in their reputations, as a direct and proximate result of Defendant's predatory pricing.

### Count II
### (Abuse of Process)

60. TranzDepot re-alleges and incorporates herein by reference each and every allegation of its Complaint set forth above.

61. Defendant commenced a legal proceeding in proper form, ostensibly with probable cause, by filing its Complaint for Injunctive Relief in Case No. 1:19-cv-01230-PAB.

62. Defendant perverted Case No. 1:19-cv-01230-PAB to attempt to accomplish an ulterior motive for which it was not designed, namely to use fact discovery not for the purposes envisioned by the Federal Rules of Civil Procedure, but rather to obtain an unfair competitive advantage in the marketplace and to destroy and/or drive TranzDepot from the market.

63. Defendant's wrongful use of process has resulted in direct damages to TranzDepot.

64. TranzDepot's damages include, but are not limited to, the business it lost as a result of Defendant's predatory pricing and other use of discovery materials for competitive purposes, and also attorney's fees incurred by TranzDepot while defending Case No. 1:19-cv-01230-PAB.

## Count III
### (Tortious Interference With Business Relationships)

65. TranzDepot re-alleges and incorporates herein by reference each and every allegation of its Complaint set forth above.

66. TranzDepot has or had business relationships with its customers.

67. Defendant had knowledge of TranzDepot's business relationships with its customers due to the 3,503 invoices that were produced in Case No. 1:19-cv-01230-PAB.

68. Defendant intentionally interfered with TranzDepot's business relationships with its customers by engaging in predatory pricing and/or using TranzDepot's customer invoices produced in Case No. 1:19-cv-01230-PAB for competitive purposes.

69. Customers have reduced or ceased purchasing products from TranzDepot as a direct result of Defendant's interference.

70. Defendant's actions were improper, without privilege or justification, purposeful, and malicious with the intent to injure.

71. The aforesaid tortious conduct by Defendant proximately caused financial damages to TranzDepot.

## Count IV
### (Prayer for Punitive Damages)

72. TranzDepot re-alleges and incorporates herein by reference each and every allegation of its Complaint set forth above.

73. Defendant acted towards Defendants with malice, aggravated or egregious fraud, oppression, or insult so as to entitle Defendants to recover punitive and/or exemplary damages against Plaintiff.

## Count V
### (Permanent Injunction)

74. TranzDepot re-alleges and incorporates herein by reference each and every allegation of its Complaint set forth above.

75. Defendant's predatory pricing constitutes violations of the Sherman Act.

76. TranzDepot will succeed on the merits of its claims; TranzDepot will continue to suffer irreparable injury if an injunction enjoining Defendant from further predatory pricing is not issued; the requested injunction will have no harmful effect on third parties; and the public interest would be served by the requested injunction.

77. TranzDepot is therefore entitled to an injunction enjoining Defendant from further predatory pricing in violations of the Sherman Act.

WHEREFORE, TranzDepot respectfully requests that judgment be made and entered in its favor and against Defendant as follows:

a. Award TranzDepot compensatory damages against Plaintiff;

b. Award TranzDepot punitive and/or exemplary damages against Plaintiff;

c. Adjudge Defendant's predatory pricing to be violations of the Sherman Act, 15 U.S.C. § 2;

d. Award TranzDepot three times the amount of its actual damages, pursuant to 15 U.S.C. § 15;

e. Award TranzDepot its costs of suit, including a reasonable attorney's fee, pursuant to 15 U.S.C. § 15 and Ohio common law regarding abuse of process;

f. Enter a permanent injunction pursuant to 15 U.S.C. § 26 restraining and enjoining Defendant, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them from engaging in further predatory pricing;

g. Grant TranzDepot such other and further relief as this Court may deem just and proper.

h. TranzDepot demands a trial by jury of any issue triable of right by a jury.

Respectfully submitted this 2nd day of July, 2020.

/s/ Matthew T. Gomes, Esq.
Nick P. Panayotopoulos (Georgia Bar No. 560679)
Matthew T. Gomes (Georgia Bar No. 297453)
Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, GA 30326
Phone: (404) 876-2700
Fax: (404) 875-9433
npanayo@wwhgd.com
mgomes@wwhgd.com

Lawrence E. Burkhalter (Florida Bar No. 186104)
Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
2601 S. Bayshore Drive, Suite 1500
Miami, FL 33133
Phone: (305) 455-9500
Fax: (305) 455-9501
lburkhalter@wwhgd.com

        Nicholas J. Dertouzos (0071018)
        Nicola, Gudbranson & Cooper, LLC
        25 West Prospect Avenue
        Republic Building, Suite 1400
        Cleveland, OH 44115
        Phone: (216) 621-7227
        Fax: (216) 621-3999
        dertouzos@nicola.com